# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Alan Keith Levesque,<br><br><div align="right">Debtor(s).</div> | C/A No. 20-03330-EG<br><br>Adv. Pro. No. 22-80008-EG |
| Michelle Vieira, Chapter 7 Trustee for Alan Keith Levesque,<br><br><div align="right">Plaintiff(s),</div><br>v.<br><br>Think Tank Logistics, LLC<br>IGL Logistics, Inc.<br>James Burke,<br><br><div align="right">Defendant(s).</div> | Chapter 7<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS IN LIMINE REGARDING EXPERT WITNESS REPORTS AND TESTIMONY** |

This matter is before the Court on Plaintiff's *Motion to Strike Expert Report and Deposition of John R. Markel, and Motion to Exclude his Testimony at Trial*[1] ("Plaintiff's Motion") and Defendants' *Motion to Exclude Evidence*[2] ("Defendants' Motion"). Defendants filed an objection to Plaintiff's Motion,[3] and Plaintiff filed an objection to Defendants' Motion.[4] Through this adversary proceeding, the Chapter 7 Trustee seeks to avoid Debtor's transfer of his interest in two corporate entities and recover either the membership/ownership interests themselves or the value of such interests from Defendants. The pivotal issues in this adversary proceeding are the value of Debtor's minority interests in the two entities and the

---

[1] ECF No. 56, filed June 6, 2023.
[2] ECF No. 58, filed June 6, 2023.
[3] ECF No. 59, filed June 20, 2023.
[4] ECF No. 61, filed June 20, 2023.

consideration paid to Debtor in exchange for the transfers, and both sides intend to use reports and testimony of their respective experts to advance their position as to the value of the transferred ownership interests.  The issues presented in the motions currently before the Court can be summarized as follows: (1) whether the Defendants' expert report and testimony meet the requirements for admissibility under the Federal Rules of Evidence and satisfy the standards of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and ensuing precedents and (2) whether Plaintiff's expert is qualified and his reports meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) and satisfy the requirements for admissibility under the Federal Rules of Evidence and the *Daubert* standards.  After reviewing the motions, exhibits attached thereto, and applicable law, the Court rules as follows:

## FACTUAL BACKGROUND

Michelle L. Vieira ("Plaintiff or Trustee"), the Chapter 7 Trustee for the bankruptcy estate of Alan Keith Levesque ("Debtor" or "Levesque"), commenced this adversary proceeding on February 28, 2022, by filing a Complaint against Think Tank Logistics, LLC ("TTL"), IGL Logistics, LLC ("IGL"), and James Burke (collectively "Defendants").  The Complaint alleges eight causes of action against Defendants, all of which arise from the same factual allegations relating to Debtor's transfer of his interests in TTL and IGL through his execution of certain membership/ownership interest redemption agreements on May 31, 2019 ("Redemption Agreements"):

1. Avoidance of the TTL transfer pursuant to 11 U.S.C. § 544 and S.C. Code Ann. § 27-23-10 ("Statute of Elizabeth");

2. Avoidance of the TTL transfer pursuant to 11 U.S.C. § 548(a)(1)(B);

3. Avoidance of the TTL transfer pursuant to 11 U.S.C. § 544 and N.C. Uniform Voidable Transactions Act;

4.  Avoidance of the IGL transfer pursuant to 11 U.S.C. § 544 and S.C. Code Ann. § 27-23-10;

5.  Avoidance of the IGL transfer pursuant to 11 U.S.C. § 548(a)(1)(B);

6.  Avoidance of the IGL transfer pursuant to 11 U.S.C. § 544 and N.C. Uniform Voidable Transactions Act;

7.  Recovery of the Avoided Transfers pursuant to 11 U.S.C. § 550; and

8.  Breach of Fiduciary Duty.

Defendants filed an Answer to the Complaint on March 31, 2022. Following a lengthy discovery period, the parties filed cross motions for summary judgment, which were both denied by Order entered on April 7, 2023.

The Court conducted a pretrial conference on May 2, 2023, and thereafter entered a scheduling order on May 3, 2023, setting deadlines for the filing of a joint pretrial order and pretrial evidentiary motions and responses. The scheduling order provided that "[t]he Court may set any [motion in limine or other motion pertaining to evidence] for hearing or may issue a ruling without a hearing. After all motions have been ruled upon, the Court will schedule a status conference to set this matter for trial." On June 6, 2023, Plaintiff and Defendants filed the motions presently before the Court. On June 20, 2023, Defendants filed an objection to Plaintiff's Motions and Plaintiff filed an objection to Defendants' Motion. The facts and arguments were adequately presented in the pleadings and, after a thorough review the Court has concluded that oral argument would not aid the decisional process and that a hearing is unnecessary to rule on the Motions before the Court.

<u>Plaintiff's Motion</u>

Pursuant to Federal Rules of Evidence 702, 703, and 403, Plaintiff requests that the Court strike the expert report (the Markel Report") and deposition testimony of Defendants'

expert witness, John R. Markel ("Markel").  Plaintiff further seeks an order prohibiting Markel from testifying at the trial on this matter.  For the reasons stated below, Plaintiff's Motion is granted in part and denied in part.

<div align="center">Defendants' Motion</div>

Defendants seek to exclude the testimony of Plaintiff's expert witness, Christopher Nowell ("Nowell"), and exhibits 62 through 65, which include Nowell's Curriculum Vitae and expert reports regarding the valuation of IGL as of May 31, 2019, August 21, 2020, and December 31, 2021 (collectively, "the Nowell's Reports"), pursuant to Fed. R. Civ. P. 26(a)(2)(B) and Federal Rules of Evidence 403 and 702.  Defendants assert that Nowell is not a qualified expert as required by Federal Rule of Evidence 702 and that the Nowell's Reports and testimony are irrelevant to this case, lack any probative value and are unduly prejudicial to the Defendants.[5]  For the reasons stated below, Defendants' Motion is granted in part and denied in part.

<div align="center">

**LEGAL STANDARD**

</div>

The following legal standard applies to the Court's review of both expert motions.

**I.  Applicable Legal Standard**

*a.  Motions in Limine*

A motion in limine aids the trial process by allowing the Court to rule in advance of trial on the relevance and admissibility of certain evidence that is expected to be presented, thus avoiding delay caused by the interruption of the trial to hear argument on these issues. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.,* No. 2:18-cv-3487, 2023 WL 3409039, at *1 (D.S.C. May 12, 2023); *see also In re Corp. Res. Servs., Inc.,* 603 B.R. 888,

---

[5] Defendants also attached a list of objections to the various exhibits Plaintiff proposes to present at trial but asserted that the objections may be dealt with during the trial.

892 (Bankr. S.D.N.Y. 2019).  Judges have broad discretion when ruling on motions in limine.  *See Aqueous,* 2023 WL 3409039, at *1 (citing *Kauffman v. Park Place Hosp. Grp.,* 468 F. App'x 220, 222 (4th Cir. 2012)).  Only evidence that is "clearly inadmissible on all potential grounds" should be excluded on a motion in limine.  *Id.* (quoting *United States v. Verges,* No. 1:13-222, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014)).  The proponent of the evidence bears the burden of establishing that the admissibility requirements are met by a preponderance of the evidence.  *See Bourjaily v. United States,* 483 U.S. 171 (1987); *see also In re Corp. Res. Servs., Inc*., 603 B.R. at 895 ("The party seeking to admit an expert bears the burden of demonstrating admissibility by a preponderance of the evidence.").

   b.  *Federal Rule of Evidence 403*

        Federal Rule of Evidence 403 allows the Court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  The Court "must balance the probative value of and need for the evidence against the harm likely to result from its admission."  *Nat'l Ass'n for Advancement of Colored People, Inc. v. City of Myrtle Beach,* 503 F. Supp. 3d 390, 394 (D.S.C. 2020).

   c.  *Federal Rules of Evidence 702 & 703*

        Federal Rule of Evidence 702 requires a judge to ensure that all scientific, technical, or other specialized knowledge is not only relevant but also reliable.  *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999).  Rule 702 provides:

        A witness who is qualified as an expert by knowledge, skill, experience,
        training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help
the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the
case.

Fed. R. Evid. 702.  The judge's role when deciding whether to admit an expert report or

testimony is to act as a gatekeeper with wide discretion.  *Hanckel v. Campbell (In re Hanckel)*,

C/A No. 12-04936, Adv. No. 14-80116, 2015 WL 8607388, at *15 (Bankr. D.S.C. Dec. 11,

2015) (citing *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001)).  To be

admissible as evidence, the Court must find that the expert testimony is both reliable and

relevant.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); Fed. R. Evid. 402

("Irrelevant evidence is not admissible.").  When determining reliability of an expert opinion,

the judge "must ensure that the proffered expert opinion is based on scientific, technical, or

other specialized knowledge and not on belief or speculation, and inferences must be derived

using scientific and other valid methods."  *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th

Cir. 2017).  As to the relevancy of the evidence, the standard under the Federal Rules of

Evidence is liberal—evidence from an expert is relevant if it helps the trier of fact understand

the evidence or determine a fact in issue.  *Id.*

In a bench trial in which the judge is serving as the trier of fact, the gatekeeping

function is relaxed because the judge is better equipped than a jury to weigh the probative

value of expert evidence.  *Bishop of Charleston v. Century Indem. Co.*, 225 F. Supp. 3d 554,

567 (D.S.C. 2016); *Anderson v. Cordell (In re Infinity Bus. Grp.)*, C/A No. 10-06335, Adv.

Pro. No. 12-80208, 2018 WL 1234649, at *2 (Bankr. D.S.C. Feb. 8, 2018) (denying the

parties' motions to exclude expert testimony at the pretrial stage, noting that "when a bench

trial is conducted, the gatekeeping role of the Court under *Daubert* is less critical."); *Hanckel*,

2015 WL 860738, at *1 (admitting both expert reports and noting that "the court's discretion is particularly broad in bench trials, for there is no jury to protect from unreliable information."); *see also Att'y Gen. of Okla. v. Tyson Foods, Inc.,* 565 F.3d 769, 779 (10th Cir. 2009) (holding that "while *Daubert's* standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial.").

When evaluating the admissibility of expert reports and testimony, the Court may consider one or more of the factors set forth by the Supreme Court in *Daubert*, including:

(1) "Whether a theory or technique… can be (and has been) tested;"

(2) "Whether it has been subjected to peer review and publication;"

(3) "Whether, in respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and"

(4) "Whether the theory or technique enjoys general acceptance within a relevant scientific community."

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149-50 (1999) (internal quotations omitted) (citing *Daubert,* 509 U.S. at 592-94) (holding that the court's gatekeeping role applies to all expert evidence and is not limited to scientific expert evidence). The *Daubert* factors "do not constitute a definitive checklist or test" and the inquiry must be tied to the particular facts and circumstances of the case. *Id.* at 150 (quoting *Daubert*, 509 U.S. at 591).

## DISCUSSION

### I.    Plaintiff's Expert Motion

Defendants designated Markel as an expert on valuation. Markel is a Certified Public Accountant and the Managing Director of Markel Valuations, PC located in Greenville, South Carolina, which specializes in business valuation and forensic investigative accounting. In

connection with this litigation, Markel prepared the Markel Report, dated November 14, 2022, setting forth his opinions regarding (1) the value of Levesque's 49% equity ownership interest in TTL as of May 31, 2019; (2) the value of Levesque's 49% equity ownership interest in IGL as of May 31, 2019; (3) "consideration" received by Levesque in exchange for his 49% interest in the companies and in exchange for his agreement to guaranty company debts as a result of the Redemption Agreements; (4) the "apportioned value" of Levesque's guarantee of the debts of the companies as a result of the Redemption Agreements; (5) the sufficiency of consideration given to Levesque in exchange for his guarantee of company debt; and (6) use of "hindsight" in determining value. While Plaintiff does not question Markel's qualifications as an expert witness, she asserts that Markel's report is not reliable or helpful and should therefore be excluded and further argues that the probative value of his opinions is substantially outweighed by unfair prejudice, confusing the issues, and misleading the trier of fact. For the same reasons, she also seeks the exclusion of Markel's deposition testimony regarding the Markel Report and his testimony at trial.

a. *Markel's Opinion of Value of Levesque's 49% Equity Ownership Interest in TTL*

Markel's Report concludes that as of May 31, 2019, based on the valuation approaches, methodologies, and procedures applied, the fair market value of Levesque's 49% equity ownership interest in TTL had a value of $0.01.[6] Plaintiff asserts that Markel's opinion of value was made without reviewing balance sheets and other financial statements for TTL and was essentially based upon representations of an officer and employee of Defendants that "during the time frame of April 3, 2019 – May 31, 2019, TTL's assets and liabilities were all effectively absorbed by IGL" and the fact that TTL had lost a significant customer contract

---

[6] Markel Report, ECF No. 56, Ex. 1, at 2; App. B, at 7.

on April 3, 2019.[7]  Accordingly, Plaintiff argues that this opinion of value is not based on sufficient facts or data and is not the product of reliable principles and methods.  In response, Defendants argue that the representations of officers and employees of a company are routinely relied upon by experts in rendering their opinion and that the loss of this customer contract caused TTL to lose all of its business and therefore it no longer had any value as a business.

The Court agrees with the Plaintiff that Markel's opinion of value of TTL lacks sufficient factual support.  "In order to be admissible, an expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *In re Corp. Res. Servs.,* 603 B.R. 888, 895 (Bankr. S.D.N.Y. 2019) (quoting *Riegel v. Medtronic, Inc.,* 451 F.3d 104, 127 (2d Cir. 2006), *aff'd on other grounds,* 552 U.S. 312 (2008)); *see also In re Nellson Nutraceutical, Inc.,* 356 B.R. 364, 373 (Bankr. D. Del. 2006) ("if the factual basis of an expert's opinion is so fundamentally unsupported because the expert fully relies on . . . speculation, or fails to consider relevant facts in reaching a conclusion, the expert's opinion can offer no assistance to the trier of fact, and is not admissible on relevance ground.")  Markel's report summarizing his valuation of Levesque's interest in TTL is brief (only two short paragraphs) and does not specify the methodologies used to support his conclusion of value.  This is in marked contrast to Markel's valuation report regarding Levesque's interest in IGL, which is five pages in length and details the valuation approaches, methodology and procedures applied and includes multiple references to and analysis of data from IGL's balance sheet.  Markel admitted in his deposition

---

[7] *Id.*

testimony that he did not review balance sheets and other financial statements of TTL in connection with his determination of the value of Levesque's interest in TTL. [8]

The Court acknowledges that Federal Rule of Evidence 703 allows, in certain situations, an expert to base an opinion "on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703. The Markel Report, however, concludes that the fair market value of Levesque's 49% membership interest in TTL is $0.01 by simply relying on the representation of an IGL representative that TTL's assets and liabilities were all effectively absorbed by IGL.  Such opinion was "based on the valuation approaches, methodologies, and procedures applied," but falls short of explaining what methodology was applied with respect to TTL's value and the facts and data on which the IGL employee based her representation.  Without consideration of these financial records, the Court is unable to conclude that Markel's valuation of TTL is reliable or based upon sufficient facts or data and therefore excludes the portion of Markel's Report regarding his valuation of TTL from evidence.[9]

> b.  *Markel's Opinion of Value of Levesque's 49% Equity Ownership Interest in IGL*

Markel's Report further concludes that as of May 31, 2019, based on the valuation approaches, methodologies, and procedures applied, the fair market value of Levesque's 49% equity ownership interest in IGL had a value of $0.01.[10]  Plaintiff similarly challenges the admissibility of Markel's Report as to his valuation of Levesque's 49% equity ownership interest in IGL, arguing that Markel's opinion of value is not based on reasonable or reliable

---

[8] Markel Dep., ECF No. 56, Ex. 2, at 15:13-20.
[9] While Markel may be able to testify as a *rebuttal* witness on the value of Levesque's interest in TTL to challenge the methodology used and applied by Plaintiff's expert witness, Nowell did not offer any opinion as to the value of TTL, thus there does not appear to be any rebuttal testimony that he could offer as to that issue.
[10] Markel Report, ECF No. 56, Ex. 1, at 2.

information.  Specifically, Plaintiff asserts that Markel's opinion is based upon the premise

that as of May 31, 2019, IGL could not foreseeably sustain itself as a going concern without

an imminent and significant infusion of cash.[11] According to Plaintiff, this premise was

created as a result of conversations in 2022 with Defendant James Burke ("Burke") and Misty

Vogel ("Vogel"), an officer and employee of IGL, regarding their impression of the

company's financial condition in May of 2019, which are self-serving, and Markel did not

consider other information at his disposal, including Defendants' discovery responses and

Burke's Rule 2004 examination testimony, which Plaintiff argues provides a wholly different

perspective.  Plaintiff contends that Markel's alleged failure to review this other information

renders his expert opinion unreliable.  Plaintiff further asserts that Markel's Report is

unreliable because he based it on "altered" financial statements to form his opinion of value,

which are the subject of a separate motion in limine to exclude from evidence.

In response, Defendants argue that the issues raised by Plaintiff regarding the factual

basis of Markel's testimony are issues affecting credibility, which should not prevent the

expert from testifying.  The Court agrees. "'Questions regarding the factual underpinnings of

the [expert witness'] opinion affect the weight and credibility' of the witness' assessment, 'not

its admissibility.'" *Bresler v. Wilmington Tr. Co.,* 855 F.3d 178, 195 (4th Cir. 2017) (quoting

*Structural Polymer Grp. v. Zoltek Corp.,* 543 F.3d 987, 997 (8th Cir. 2008)).  "Accounting is

not an exact science. Accountants are therefore required to make judgments about how to

communicate financial information.  A *Daubert* hearing is not the time to fully test the validity

of those assumptions." *In re Joy Recovery Tech. Corp.*, 286 B.R. 54, 70 (Bankr. N.D. Ill.

2002).

---

[11] According to Markel's deposition, "imminent" meant "within weeks, two or three weeks" and "significant" meant "around $180,000 in cash." Markel Depo., ECF No. 56, Ex. No. 2, at 34.

Other courts have opined that when considering whether to exclude testimony of "non-scientific experts who rely on professional judgment or experience, *e.g.*, appraisers, business valuators, and accountants, it usually is better to allow them to testify and be cross-examined, rather than bar their testimony after a *Daubert* hearing." *In re Motiva Performance Eng'g, LLC,* Case No. 19-12539, Adv. Pro. No. 21-1026, 2022 WL 3135290, at *6 (Bankr. D.N.M. Aug. 3, 2022) (citing cases). "Experts in disciplines that require the use of professional judgment are less likely candidates for exclusion because challenges may be ultimately viewed as matters in which reasonable experts may differ in exercising their judgment as to the appropriate methodology to employ or the appropriate variable to plug into a calculation." *In re Com. Fin. Servs., Inc.*, 350 B.R. 520, 528 (Bankr. N.D. Okla. 2005) (citing *Joy Recovery Tech.,* 286 B.R. at 70). Instead, cross-examination and the presentation of evidence and opposing experts may be used at trial to allow the finder of fact to determine whether the expert's opinion is reliable, by identifying potential bias and flaws in the expert's conclusions. *Id.* at 529. Accordingly, the Court finds that Markel's Report and testimony regarding the value of Levesque's 49% equity ownership interest in IGL should not be excluded at this time. Plaintiff may test Markel's conclusions on cross-examination and through the presentation of contrary evidence at trial.

   c. *Markel's Opinion Regarding "Consideration" Received by Levesque for the Redemption Agreements*

One of the facts that remains in dispute in the adversary proceeding is the consideration that Debtor received in exchange for the Redemption Agreements. Markel's Report states his opinion that Levesque "received consideration for his benefit totaling at least $40,191 that **could be applied** to remuneration for (a) the May 31, 2019, redemption of his 49% equity ownership interest in TTL; (b) the May 31, 2019, redemption of his 49% equity ownership

interest in IGL; and (c) his May 31, 2019, guarantee of the debts of TTL and IGL."[12]   In
Appendix D of his report, Markel identifies distributions made by IGL to Levesque from
September of 2018 through April of 2019 and labels these amounts as "Consideration for the
Benefit of Mr. Levesque."[13]   In his deposition, Markel clarified that the phrase "could be
applied" when discussing his conclusion about the consideration that Debtor received means
"could be imputed" as consideration.[14]   Plaintiff argues that whether valuable legal
consideration was given to Levesque is a legal issue to be determined at trial.

Opinion testimony that states a legal standard or draws a legal conclusion by applying
law to facts is generally inadmissible. *United States v. McIver*, 470 F.3d 550, 561-62 (4th Cir.
2006).   The Fourth Circuit has stated that "the best way to determine whether opinion
testimony [is unhelpful because it merely states] legal conclusions, is to determine whether
the terms used by the witness have a separate, distinct and specialized meaning in the law
different from that present in the vernacular." *United States v. Perkins,* 470 F.3d 150, 158
(4th Cir. 2006).   "The court should first consider whether the question tracks the language of
the legal principle at issue or of the applicable statute; then, the court should consider whether
any terms employed have a specialized legal meaning." *Id.*   The term "consideration" is a
legal term of art, which is defined as: "[s]omething (such as an act, a forbearance, or a return
promise) bargained for and received by a promisor from a promisee; that which motivates a
person to do something, esp. to engage in a legal act.   Consideration, or a substitute such as
promissory estoppel, is necessary for an agreement to be enforceable." *Consideration,*
BLACK'S LAW DICTIONARY (11th. ed. 2019); *Kosnoski v. Howley,* 976 F.2d 726, at *4 (4th

---

[12] Markel Report, ECF No. 56, Ex. 1, at  2 (emphasis added).
[13] *Id.* at App. D.
[14] Markel Dep., ECF No. 56, Ex. 2, at  70.

Cir. 1992) ("Consideration is a legal term of art with a very specific meaning in contract law.").

The issue of the consideration received by Levesque in exchange for the Redemption Agreements is a crucial question of law to be decided by the Court in this proceeding. The Court finds that the portion of Markel's Report providing his opinion on the consideration received by Levesque (¶ 8 of the Markel's Report and Appendix D) in connection with the Redemption Agreements is unhelpful because it is an improper legal conclusion and therefore should be excluded. Plaintiff's motion to preclude Markel's testimony on this subject at trial is granted. To the extent it is relevant and not barred by the parol evidence rule, evidence regarding the prior distributions to Levesque may be submitted by other means.[15]

### d. *Markel's Opinion Regarding "Apportioned Value" of Levesque's Guarantee of Company Debts*

In the Complaint, Plaintiff alleges that not only did Levesque receive mere nominal consideration for the transfer of his ownership interests in TTL and IGL, but he also took on a significant debt obligation as part of the Redemption Agreements. The Redemption Agreements as to both TTL and IGL required Levesque to assume 50% of the company's debts if the company was unable to satisfy its obligations and further required Levesque to indemnify Burke for 50% of any amounts that Burke paid in connection with debts of each company.[16] The Trustee alleges that no consideration for this guarantee of company debts was provided to Levesque beyond the nominal $10.00 amount stated in the Redemption Agreements. Markel's Report concludes that, in Markel's opinion, the value of Levesque's

---

[15] Such evidence, however, could be admitted through the presentation of documents or other admissible forms of evidence.

[16] ECF No. 1, Exs. A & B.

apportioned guarantee of the debts of IGL and TTL would be $36,967.00.[17]  In opining about the "apportioned value" of Levesque's guarantee of company debts, Markel concludes that "any value associated with Levesque's apportioned TTL debt guarantee would be included in the value analysis of Levesque's apportioned IGL debt guarantee."[18]  Plaintiff asserts that this opinion relies upon the unsupported statement by Vogel that "all TTL debts were absorbed by IGL." In his deposition, Markel admitted that he did not have any knowledge regarding whether IGL had any legal obligation to take on the liabilities of TTL and that he did not trace individual liabilities from TTL to IGL.[19]   As discussed above, Markel admitted that he did not review the balance sheets and other financial statements of TTL in connection with his determination of the value of Levesque's interest in TTL.  Without consideration of the financial statements of TTL setting forth its debts and other liabilities, the Court finds that Markel's opinion as to the value of Levesque's apportioned TTL debt guarantee lacks sufficient factual support to provide a reliable calculation of the value of the TTL debt guarantee.  Therefore, the portion of Markel's Report discussing the value of Levesque's apportioned TTL debt guarantee, as well as his testimony relating to this issue, is excluded.

Plaintiff further argues that Markel's opinion as to the apportioned value of Levesque's guarantee of IGL debts is not helpful or reliable because it relies upon his assumption that "all debts would be reduced to zero over a three-year payback period, with one-third of the initial principal balance being amortized each year."[20]  Plaintiff argues that this assumption is contradictory to his opinion that "IGL was clearly within the insolvency spectrum as of May

---

[17] Markel Report, ECF No. 56, Ex. 1, at 2.
[18] *Id.*, App. E, at 14.
[19] Markel Dep., ECF No. 56, Ex. 2, at 16.
[20] Markel Report., ECF No. 56, Ex. 1, App. E, at 14.

31, 2019, and could not foreseeably sustain itself as a going concern."[21]  For the same reasons

stated above for allowing Markel's opinion on the value of Levesque's equity ownership

interest in IGL, the Court finds that Markel's expert opinion on the apportioned value of

Levesque's guarantee of IGL debts is admissible.  Plaintiff may test the validity of Markel's

assumptions on cross-examination.

e. *Markel's Opinion Regarding Sufficiency of Consideration Given for Guarantee of Company Debts*

The Markel Report concludes that Levesque's consideration for the value of his

apportioned debt guarantee in the amount of $36,967.00, was "more than sufficient."[22]

Plaintiff asserts that Markel's opinion is an improper legal conclusion.  For the reasons stated

above, the Court finds that Markel's Report and testimony regarding consideration for the

value of the apportioned debt guarantee must also be excluded as unhelpful to the trier of fact

because it merely states a legal conclusion. Plaintiff's motion to preclude Markel's testimony

on this subject at trial is also granted.

f. *Markel's Opinion Regarding Use of "Hindsight" in Determining Value*

To conclude that the value of Levesque's 49% equity ownership interest in IGL as of

May 31, 2019, was $0.01, Markel uses the *income-based approach* while embracing a

"forward-looking" premise "by calculating value based on the assumption that the value of an

ownership interest is equal to the sum of the present values of the expected future benefits of

owning the interests."[23]  More specifically, Markel opines:

> Business valuation is a forward-looking process.  However, it is important to
> sharply distinguish between (a) foreseeability in valuation and (b) hindsight in

---

[21] *Id.,* App. C, at 10.

[22] *Id.,* at 3, ¶10.

[23] In his report, Markel also considers the applicability of the *market-based approach* and the *asset-based approach* but finds them to be inappropriate in the context of the entity he was valuing.  Markel Report, ECF No. 56, Ex. 1, App. C, at 11.

valuation. In my opinion, under the fair market value standard of value, it is firmly established in valuation professional standards, valuation principles, and in peer-reviewed valuation treatises that the valuation analyst cannot consider actual subsequent events unless they could be reasonably foreseen from the notional perspective of the valuation date (in this case May 31, 2019). In other words, any use of hindsight would clearly be inappropriate in determining the fair market value of Mr. Levesque's 49% equity ownership interest in TTL as of May 31, 2019.[24]

Plaintiff contends that Markel's opinion that a valuation cannot consider actual subsequent events "unless they could be reasonably foreseen from the notional perspective of the valuation date" is unnecessary and unhelpful and is merely commentary on what Markel believes is an appropriate valuation process. According to Defendants, an expert is required to disclose a complete statement of all opinions the witness will express and the basis and reasons for them under Fed. R. Civ. P. 26(a)(2)(B)(i), and Markel's opinion of value was based upon the premise that it is improper to use hindsight in determining value. Defendants further assert that this premise is commonly accepted among valuation experts.

When making a *Daubert* analysis to determine whether expert testimony is admissible, the court's role is "not to determine whether the proffered testimony is entirely accurate; rather, the inquiry is into whether the evidence was derived from methods that are generally employed by experts in that field." *In re Joy Recovery Tech. Corp.,* 286 B.R. 54, 70 (Bankr. N.D. Ill. 2002) (citing *Kumho Tire,* 526 U.S. at 152); *Bresler v. Wilmington Tr. Co.,* 855 F.3d 178, 195 (4th Cir. 2017) ("To determine whether an opinion of an expert witness satisfies *Daubert* scrutiny, courts may not evaluate the expert witness' conclusion itself, but only the opinion's underlying methodology.") (citing *TFWS, Inc. v. Schaefer,* 325 F.3d 234, 240 (4th Cir. 2003)). The Court must look beyond the expert's conclusion and analyze the adequacy

---

[24] *Id.*, at 3.

of the foundation.  *Joy Recovery Tech. Corp.,* 286 B.R. at 70.  The *Daubert* test is intended to be flexible to allow for the presentation of competing evidence from experts on both sides of a case.  *Id.*  "When the Court is presented with conflicting expert valuations, the 'court must determine the value based on the credibility of the appraisers, the logic of their analyses and the persuasiveness of their subject reasoning."  *In re Myers,* 631 B.R. 392, 395 (Bankr. D.S.C. 2021) (quoting *In re Simmons,* 627 B.R. 319 (Bankr. D.S.C. 2021)).  In this case, the parties propose to present competing valuation experts with vastly different opinions on the value of Levesque's equity ownership interests in the companies.  Plaintiff has not asserted that Markel's opinion on this issue relies upon unreliable or improper methodology.  Plaintiff's critique of Markel's opinion on use of hindsight to determine value goes to the weight of the evidence, not its admissibility.  Markel's testimony regarding the assumptions and principles he applied (or chose not to apply) is helpful to the Court to determine the soundness of the methodology underlying his opinion of value.  The Court therefore finds that Markel's opinion regarding the appropriateness of using hindsight in determining value is admissible.  Plaintiff may challenge the accuracy of Markel's opinion on this issue through cross examination and presentation of contrary evidence.

## II.    Defendants' Expert Motion

Defendants seek to exclude the testimony of Plaintiff's expert witness, Nowell, and exhibits 62 through 65, which include Nowell's Reports and his Curriculum Vitae. Defendants assert that (1) Nowell's Reports do not comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B); (2) Nowell is not a qualified expert as required by Federal Rule of Evidence 702; (3) Nowell did not base his testimony on sufficient facts or data nor is his testimony the product of reliable principles and methods as required by Federal Rule of

Evidence 702(b) and (c); and (4) Nowell's Reports relating to the value of IGL as of August 21, 2020 and December 21, 2021 are irrelevant to this case, lack any probative value and are unduly prejudicial to the Defendants.

   a.  *Compliance with Fed. R. Civ. P. 26(a)(2)(B)*

Defendants assert that Nowell's Reports do not comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B), because (1) Nowell did not fully disclose the facts or data he considered in forming his valuation opinions, (2) Nowell's Reports fail to include a list of qualifications, and (3) no prior cases where Nowell provided testimony are listed in the Reports.  Due to these deficiencies, Defendants argue that Nowell's Reports and testimony must be excluded. Fed. R. Civ. P. 26(a)(2)(B) requires an expert witness to prepare a written report, which must contain:

   (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;
   (ii)   the facts or data considered by the witness in forming them;
   (iii)  any exhibits that will be used to summarize or support them;
   (iv)   the witness's qualifications, including a list of all publications authored in the previous ten years;
   (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
   (vi)   a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). The purpose of Fed. R. Civ. P. 26(a) is to allow litigants "to adequately prepare their cases for trial and to avoid unfair surprise."  *Russell v. Absolute Collection Servs. Inc.,* 763 F.3d 385, 396 (4th Cir. 2014).  "A party who fails to comply with the expert witness disclosure rules is prohibited from 'us[ing] that information or witness to supply evidence…at a trial, unless the failure was substantially justified or is harmless.'" *Bresler v. Wilmington Tr. Co.,* 855 F.3d 178, 190 (4th Cir. 2017) (citing Fed. R. Civ. P. 37(c)(1)).  "The party failing to disclose information bears the burden of establishing that the

nondisclosure was substantially justified or harmless." *Id.*   To determine whether nondisclosure or untimely disclosure is substantially justified or harmless, the Court is guided by five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *S. States Rack and Fixture, Inc. v. Sherwin-Williams Co.,* 318 F.3d 592, 596 (4th Cir. 2003).

### 1.  Failure to Disclose Facts and Data

Appendix D of each of Nowell's Reports provides the sources of information the expert used in reaching his conclusion and specifies that "[t]he following list *is an example* of the sources of information."[25]   As evidence of Nowell's noncompliance with Rule 26(a)(2)(B)(ii), Defendants cite to Nowell's deposition testimony where he admitted that there were documents he reviewed and considered in his valuation—for example, information regarding the termination of the ICAT agency agreement and the deposition of Levesque—which were not listed in his sources of information on Appendix D to his Reports.  Plaintiff responds that Nowell's Reports set forth the key sources of information considered by Nowell, which includes, among other items, the tax returns, the Redemption Agreement, Articles of Incorporation, Financial Documents (*i.e.*, balance sheets, profit and loss statements, etc.), research of overall economic conditions, and an analysis of the current and future earnings capacity of IGL.  Plaintiff argues that Rule 26(a)(2) does not require an exhaustive list of every data point reviewed, when the expert did not consider the data point to be material to

---

[25] Nowell's Report of Valuation as of May 31, 2019 ("May 2019 Report"), ECF No. 58, Ex. 2, at 63; Nowell's Report of Valuation as of August 21, 2020 ("August 2020 Report"), ECF No. 58, Ex. 3; at 91; & Nowell's Report of Valuation as of December 31, 2021 ("December 2021 Report"), ECF No 58, Ex. 4, at 71.

the ultimate opinions that were formed.  Plaintiff asserts that the omitted information was not material to Nowell's valuation opinion.

However, the Rule requires disclosure of "the facts or data *considered* by the witness in forming [the expert's opinions]." Fed. R. Civ. P. 26(a)(2) (emphasis added).  The Advisory Committee Notes to Rule 26 state that "the intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients.  The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." Fed. R. Civ. P. 26, advisory committee's note to 2010 amendment.  The Court agrees with Defendants that Rule 26 requires any documents or other sources of information Nowell reviewed and considered in making his valuation to be disclosed, regardless of whether he relied upon that specific source to make his determination of the value of IGL. The Court further observes that Rule 26(e)(1) provides that a party must correct a disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing, . . . or as ordered by the court." Fed. R. Civ. P. 26(e)(1).  In addition, Rule 26(e)(2) states that "a party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.  Any additions or changes to this information must be disclosed by the time the parties' pretrial disclosures under Rule 26(a)(3) are due." *Id.*  Under Rule 26(a)(3), pretrial disclosures are due at least 30 days before trial.  The trial in this adversary proceeding has yet to be scheduled; therefore, the nondisclosure can be cured prior to trial. Accordingly, to the extent that Nowell considered other facts and data that are not included in

his expert report, Nowell's Report must be supplemented within fifteen (15) days of this Order to provide that information.

Under the circumstances of this case, the Court further finds that Nowell's failure to include such information in his expert report does not constitute a discovery violation for which the harsh sanction of exclusion is warranted—as Defendants propose.[26]  "[E]ven if a party fails to adhere strictly to the disclosure requirements of Rule 26, imposing the sanction of precluding expert testimony is not required."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 581 B.R. 370, 382 (Bankr. S.D.N.Y. 2017) (quoting *Harkabi v. SanDisk Corp*., No. 08 Civ. 8203(WHP), 2012 WL 2574717, at *4 (S.D.N.Y. June 20, 2012)) (stating further that the "[p]reclusion of expert testimony is a drastic remedy, and imposing such sanction for failing to comply strictly with Rule 26 could frustrate the Federal Rules' overarching objective of doing substantial justice to litigants.") (internal quotations omitted).  As the Plaintiff argued, the Nowell's Reports include the information ultimately relied upon to form his expert opinion, the Court finds there is minimal harm to Defendants as a result of receiving, prior to trial, delayed disclosure of information that was considered but not relied upon by Nowell. *See Bresler v. Wilmington Tr. Co.,* 855 F.3d at 193 (concluding that the district court did not abuse its discretion in admitting the testimony of plaintiffs' expert witness despite the plaintiff's noncompliance with Rule 26(a)(2)(B), where the noncompliance was harmless in the context of the events that transpired).

---

[26] Defendants cite to *Bresler v. Wilmington Tr. Co.* as support for their claim that Nowell's Reports should be excluded.  855 F.3d at 190.  However, the Court observes that the Fourth Circuit did not find that the disputed evidence should have been excluded for nondisclosure under Rule 37(c)(1), instead finding that the untimely disclosure was harmless.  *Id.*

2. *Failure to List Qualifications & Publications*

Defendants next argue that the Nowell Reports fail to meet the requirements of Rule 26 (a)(2)(B)(iv) because they fail to provide a list of all publications authored in the previous 10 years and lists no qualifications in Appendix C of his report.  Plaintiff responds that Nowell has been licensed as a Certified Public Accountant ("CPA") in South Carolina since 1985 and his license is current and in good standing.   Appendix C: *Qualifications of Appraiser* to Nowell's Report states that he is a CPA, holds a Bachelor of Science degree in Accounting from Clemson University, and is a member of the American Institute of Certified Public Accountants (AICPA) and the South Carolina Association of Certified Public Accountants (SCACPA).

Rule 26(a)(2)(B)(iv) requires an expert witness to provide a list of the witness's qualifications, including a list of all publications authored in the previous 10 years.  Nowell's Curriculum Vitae, which Plaintiff asserts was provided to Defendants as part of Plaintiff's Amended and Supplemental Responses to Defendants' First Set of Continuing Interrogatories on September 7, 2022, provides information regarding his educational history, professional experience (including over 400 business valuations), professional designation as a CPA, and presentations.  No publications were disclosed.  The Court does not interpret the Rule as requiring publication to qualify as an expert, rather, what is required is that any publications authored by the expert within the past ten years must be disclosed.  It appears from Nowell's Curriculum Vitae that he has not authored any publication in the last decade.  Based on the information provided, however, the Court finds that Nowell's Reports, together with other information, including Nowell's Curriculum Vitae previously provided by Plaintiff through discovery, provide sufficient information as to the expert witness's qualifications.

### 3.  Failure to List Prior Cases Where Testimony was Provided

Defendants further assert that Nowell's Reports do not meet the requirements of Rule

26 because they fail to list prior cases where testimony was provided.  Rule 26(a)(2)(B)(v)

requires an expert witness's report to list "all other cases in which, during the previous 4 years,

the witness testified as an expert at trial or by deposition."  Plaintiff responded that while

Nowell has previously provided deposition testimony numerous times in the past, he has not

had an occasion to do so in the past four years.  Accordingly, the Court finds that the

requirements of Rule 26(a)(2)(B)(v) are satisfied.

### b.  Nowell's Qualification as Expert Witness on Valuation

Defendants further argue that Nowell is not a qualified expert as required by Federal

Rule of Evidence 702.  Defendants argue Nowell has no training, education, or experience to

qualify as an expert on business valuation.  Specifically, Defendants point to Nowell's lack of

membership in the American Society of Appraisers and National Association of Certified

Valuators and Analysts and lack of accreditation or certification in business valuations to draw

the harsh conclusion that "Nowell is no more qualified to give an expert opinion on business

valuation than a boastful third grader."

Rule 702 provides that "a witness who is qualified as an expert by knowledge, skill,

experience, training, *or* education may testify in the form of an opinion or otherwise…." Fed.

R. Evid. 702 (emphasis added).  It is settled law that an expert can meet the requirements of

Rule 702 by fulfilling any one of the five bases for qualification.  *See Kopf v. Skyrm*, 993 F.2d

374, 377 (4th Cir. 1993) ("Inasmuch as the rule uses the disjunctive, a person may qualify to

render expert testimony in any one of the five ways listed."); *In re Pella Corp. Architect and

Designer Series Windows Mtkg., Sales, Prac. and Prod. Liab. Litig.*, 214 F. Supp. 3d 478, 496

(D.S.C. 2016) (stating that "a challenge based on lack of qualifications alone must demonstrate that the purported expert has neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.") (quoting *SAS Inst., Inc., v. World Programming Ltd.,* 125 F. Supp. 3d 579, 586 (E.D.N.C. 2015)); 29 WRIGHT & GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6265 at 244-45 (1997).  Courts have also agreed that any gaps in an expert's knowledge generally go to the weight of the witness's testimony, not its admissibility.  *See id.* at 251 (citing, *inter alia, Thomas J. Kline, Inc. v. Lorillard, Inc*., 878 F.2d 791, 799 (4th Cir. 1989) ("One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion.")).  "The lack of industry-specific experience is not disqualifying."  *In re Corp. Res. Servs.,* 603 B.R. at 896 (citing cases).  Critiques regarding an expert witness's lack of experience providing litigation valuation services or industry-specific valuation go to the weight the trier of fact should give to the testimony.  *Id.*

Based on a review of Nowell's Reports and Curriculum Vitae, as well as Nowell's deposition testimony regarding his experience performing business valuations, the Court finds that Nowell is qualified as an expert witness by his knowledge, skill, experience, training and/or education.

    *c.*   *Reliability of Nowell's Reports*

In drastic contrast with Markel's Valuation of IGL at $0.01, Nowell's Reports opines that IGL had a value of $6,999,500.00, as of May 31, 2019, $5,108,000.00 as of August 31, 2020, and $6,189,800.00 as of December 31, 2021.[27] Defendants contend that Nowell's Reports and testimony do not meet the requirements of Federal Rule of Evidence 702(b) and

---

[27]May 2019 Report at 1; August 2020 Report, at 2; December 2021 Report, at 2.

(c) and should be excluded because his conclusions are neither based on sufficient facts or data nor the product of reliable principles and methods. Even if a witness is qualified as an expert by knowledge, skill, experience, training or education, the Court must ensure that (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). The factors to be considered in this analysis include "whether a theory or technique… can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operation," and whether the theory or technique has garnered "general acceptance." *Daubert,* 509 U.S. at 593-94. The Fourth Circuit has stated that these factors are not definitive or exhaustive and are "merely illustrative of the types of factors that will bear on the inquiry." *United States v. Hassan,* 742 F.3d 104, 130 (4th Cir. 2014). A court's conclusion that expert testimony is reliable "does not indicate, in any way, the correctness or truthfulness of such an opinion." *In re Creekside Sr. Apartments, LP,* 477 B.R. 40, 65 (B.A.P. 6th Cir. 2012) (quoting *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 529 (6th Cir. 2008)); *see also United States v. Moreland,* 437 F.3d 424, 431 (4th Cir. 2006) (stating that when conducting a *Daubert* analysis, "[t]he court need not determine that the proffered expert testimony is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to testing by 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'") (quoting *Daubert,* 509 U.S. at 596).

Defendants argue that Nowell did not consider what they contend are critical facts in forming his valuation of IGL as of May 31, 2019, including but not limited to the termination

of the ICAT agency agreement; the embezzlement of over $100,000.00 from Think Tank and IGL by a former employee just prior to Debtor's resignation; the different ownership equity between Defendant Burke and Debtor; and the $254,189.00 net income loss when determining book value solvency of IGL and Think Tank.

Challenges to the facts and data underlying an expert report, however, go to the "weight and credibility of the witness's assessment, not its admissibility." *Bresler,* 855 F.3d at 195; *see also McGarity v. FM Carriers, Inc.,* No. CV410-130, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) ("[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross examination and does not render expert testimony inadmissible under *Daubert*."). "Because the valuation process often involves the analysis of conflicting appraisal testimony, a court must necessarily assign weight to the opinion testimony based on its view of the qualifications and credibility of the parties' expert witnesses." *In re Creekside Sr. Apartments, LP,* 477 B.R. at 61 (quoting *In re Smith,* 267 B.R. 568, 572 (Bankr. S.D. Ohio 2001)). The Court finds that Nowell's Reports are based upon sufficient facts or data to be admissible. Defendants can challenge the facts or data Nowell relied upon during cross-examination.

Defendants further argue that Nowell's Reports do not reliably apply valuation principles and methods to the facts of the case and will not assist the trier of fact in understanding the evidence or determining a fact in issue. Defendants cite two deficiencies with Nowell's Reports: (1) his failure to value the interest that was being transferred and (2) his use of information that was not known and could not have been known on the date of the valuation.

*1. Failure to Value a 49% Interest*

Regarding Nowell's failure to value the interest transferred, Defendants argue that Nowell should have valued a 49% minority equity interest in IGL, instead of valuing a 100% interest.  Since the value of the entire business is not a fact in issue in this case, Defendants argue that Nowell's Report is not helpful in determining the value of the minority, non-controlling 49% interest in the company.  Plaintiff asserts that courts routinely multiply the total value of a non-publicly traded company by the percentage owned when valuing a partial interest therein.  To advance her position, Plaintiff cites *Santee Oil Co., Inc. v. Cox,* 265 S.E.2d 270 (S.C. 1975), where the court valued a 37.5% minority interest by taking 37.5% of the value of the company as a whole, and *Hendley v. Lee,* 676 F. Supp. 1317 (D.S.C. 1987), where the district court discussed unique considerations when the transaction is between insiders and valued a 50% interest at one-half of the whole value without applying a key man discount to the exiting partner's interest.  She further cites to *Hanckel v. Campbell (In re Hanckel),* Adv. Pro. No. 14-80116-dd, 2015 WL 8607388 (Bankr. D.S.C. Dec. 11, 2015), where this court determined the value of a 50% interest in a business by taking 50% of the value of the entire business.  It thus appears that courts have previously considered the value of the entire business to determine the value of a partial ownership interest, and Defendants have not cited any authority to the contrary.

The Fourth Circuit has provided the following guidance regarding valuation of minority interests in a business:

> The fair market value of a business interest can often be determined simply by examining its market price.  However, a closely-held company frequently has no ready market for its shares.  Therefore, "[t]he fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." *United States v. Cartwright,*

411 U.S. 546, 551, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973) (quoting Treas. Reg. § 20.2031–1(b))….And the amount a willing buyer will pay is often not based solely on asset values or net worth. Often, a discount or premium must be applied to reflect the value an investor places on things such as managerial control, ability to re-sell the shares, and other risks.

During valuation a fact finder must decide whether the value should be increased or discounted for any reason. A minority discount may be appropriate if the block of stock does not enjoy the rights associated with control of the enterprise. *Estate of Chenoweth v. Comm'r,* 88 T.C. 1577, 1582, 1987 WL 31367 (1987). The application of such a discount is only appropriate if, as a factual matter, the minority status of the interest would affect the value that a willing buyer would pay. Thus, the question of whether a discount for a lack of control is warranted depends, like the question of valuation generally, on the facts and circumstances of the case….

It is true that in a closely-held corporation, a minority interest in stock is ordinarily discounted to reflect lack of control. *See Theophilos v. Comm'r,* 85 F.3d 440, 449 (9th Cir.1996); *Estate of Bright v. United States,* 658 F.2d 999, 1002–03 (Former 5th Cir.1981) (en banc). However, the mere presumption that a discount may exist does not lead to the conclusion that a discount must be applied as a matter of law whenever a shareholder owns less than fifty-one percent of a corporation. Our view that the question of whether to apply a minority discount is factual in nature is one that is widely shared. *See Estate of Ford v. Comm'r,* 53 F.3d 924, 926 (8th Cir.1995) ("The issues of valuation and applicability of marketability and minority interest discounts are factual questions which we review under the clearly erroneous standard."); *Ahmanson Foundation v. United States,* 674 F.2d 761, 770 (9th Cir.1981) ("[I]t was not clear error for the district judge to find that there would be no control premium paid for the ... shares."); *Estate of Chenoweth,* 88 T.C. at 1589 (1987) ("The amount of such control premium presents a material issue of fact.").

*Est. of Godley v. Comm'r,* 286 F.3d 210, 214-15 (4th Cir. 2002). This guidance does not indicate that calculating the value of a minority interest by taking a percentage of the value of the business as a whole is *per se* improper. The Court finds that Nowell's valuation of 100% of IGL is helpful considering the purpose for which it is being used—to determine whether adequate consideration was exchanged for the transfer of Levesque's shares in IGL. Accordingly, the Court will not exclude Nowell's Reports or testimony on this ground.

*2. Use of Information that was not Known or Knowable*

Defendants argue that Nowell improperly relied on data obtainable only through hindsight to determine the value of IGL as of May 31, 2019.[28]  Nowell's May 2019 Report indicates that he performed the valuation as of May 31, 2019 using the premise that IGL was a going concern business enterprise.  He considered all three of the basic approaches to business valuation: Asset Based Approach Method, Income Approach Method, and Market Approach Method.  He rejected the Capitalization of Earnings Approach of the Income Approach Method and the DealStats Approach of the Market Method, finding both methods did not provide reliable estimations of the fair market value of the company.  Ultimately, he selected the Adjusted Book Value – going concern method and the Discounted Future Earnings Method to calculate the value as a going concern.  Nowell stated in his deposition that in performing his valuation he looked forward to what was "known or knowable" as of May 19, 2019.

When making a *Daubert/Kumho* inquiry, the Court must focus on the soundness of the method or theory applied by the expert.  Some of the questions the Court may consider as part of this inquiry include (1) whether the method applied is novel or unorthodox, (2) whether the method is testable, (3) whether other practitioners in the discipline subscribe to it, (4) whether courts have blessed it as an appropriate method, and (5) whether the theory or method is suitable for application to the facts of the case.  *In re Comm. Fin. Servs.,* 350 B.R. at 529.  "[T]he inquiry should not focus on the choice of facts or assumptions the expert applies to the theory, although assumptions must have some reasonable evidentiary foundation."  *Id.* (citing

---

[28] While Defendants indicate in the motion that Nowell's *Reports* rely exclusively on subsequent data in violation of applicable standards, their arguments focused entirely on the May 2019 Report.  No explanation was provided regarding how the August 2020 Report or December 2021 Report improperly relied on subsequent data.

cases).  "The approaches/methods used within a given assignment are a matter that must be determined by the business appraiser's professional judgment.  The task is generally decided through consideration of the approaches/methods that are conceptually most appropriate and those for which the most reliable data is available."  *Id.* (quoting Business Appraisal Standards promulgated by The Institute of Business Appraisers, Inc. (Publication P-311c) (2001)).

The Court finds that Nowell's Reports provide useful information for determining the value of IGL as of the date of the transfer and at subsequent points in time and are based upon financial documents supporting his analysis.  While Nowell's Reports apply a different method of valuation than Defendants' expert, the method applied nevertheless appears to be an accepted method of business valuation in the proper context used to value businesses as a "going concern."  *See In re Hanckel,* 2015 WL 8607388, at *16 (finding that an expert's valuation of a membership interest using a "going concern" value was a widely accepted method of valuation).  Nowell's Reports provide a reasonable explanation for why this valuation method was selected.  As indicated in his report, Defendants' expert appears to disagree with Nowell's assumption that the continuity of the business was reasonably assured as of the date of the transfer and therefore concluded that a different method was more appropriate.  Defendants argue that Nowell's May Report does not comply with appraisal standards because it includes data that was not known or knowable at the time of the transfer. This issue of whether the valuation report complied with applicable standards goes to the weight the report should be given, rather than whether it should be admitted.  *In re Creekside Sr. Apartments, LP,* 477 B.R. at 65.  "This is true even if an appraiser… makes extraordinary assumptions in coming to his ultimate conclusion."  *Id.* (internal quotations omitted). Accordingly, the Court will not exclude Nowell's Reports and testimony on this ground.

d. _Relevance of Nowell's Reports of Value as of August 21, 2020 and December 31, 2021_

Finally, Defendants maintain that Nowell's Reports of Value as of August 21, 2020 and December 31, 2021 are irrelevant, lack any probative value and are unduly prejudicial. Plaintiff responds that the value of IGL as of the petition date (August 21, 2020) and 2021 year-end are relevant for purposes of determining the current value of a 49% interest in IGL if Plaintiff is successful with her claim under 11 U.S.C. § 550, which allows the Court to award "the property transferred" or "the value of such property," as well as determining damages for Defendant Burke's alleged breach of fiduciary duty.  As discussed above, the Court finds that Nowell's Reports rely upon sound methodology. The relevance of the August 21, 2020 and December 31, 2021 Reports appears to turn on whether Plaintiff is successful with her fraudulent transfer claims.  These Reports will become relevant if Plaintiff prevails in this litigation for the purpose of setting damages.  Accordingly, Defendants' request to exclude this evidence from the trial is denied.

## **CONCLUSION**

For the foregoing reasons, **Plaintiff's Motion is granted in part and denied in part**, and **Defendants' Motion is granted in part and denied in part**, as follows:

(1) Plaintiff's request to exclude from evidence the portion of Markel's Report regarding the valuation of TTL is granted;

(2) Plaintiff's request to exclude Markel's Report and testimony regarding the value of Levesque's 49% equity ownership interest in IGL is denied;

(3) Plaintiff's request to exclude from evidence the portion of Markel's Report and his related deposition and trial testimony providing his opinion on the consideration received by Levesque (¶ 8 of the Markel's Report and Appendix D) is granted;

(4) Plaintiff's request to exclude from evidence the portion of Markel's Report and his related deposition and trial testimony discussing the value of Levesque's apportioned TTL debt guarantee is granted;

(5) Plaintiff's request to exclude from evidence Markel's expert opinion on the apportioned value of Levesque's guarantee of IGL debts is denied;

(6) Plaintiff's request to exclude from evidence Markel's Report and related deposition and trial testimony regarding consideration for the value of the apportioned debt guarantee is granted;

(7) Plaintiff's request to exclude from evidence Markel's opinion regarding the appropriateness of using hindsight to determine value of the companies is denied;

(8) Defendants' request to exclude Nowell's Reports based upon failure to comply with Fed. R. Civ. P. 26(a)(2)(B) is denied.  To the extent that Nowell considered other facts and data that are not included in his expert reports, Nowell's Reports must be supplemented within fifteen (15) days of this Order to provide that information;

(9) Defendants' request to exclude Nowell's Reports and testimony for lack of qualification is denied;

(10)  Defendants' request to exclude Nowell's Reports and testimony for failure to rely on sufficient facts or data and failure to use reliable principles and methods as required by Fed. R. Evid. 702(b) and (c) is denied;

(11)  Defendants' request to exclude Nowell's August 21, 2020 and December 31, 2021 Reports as irrelevant is denied; and

(12) Any remaining requests to exclude evidence and testimony in both Plaintiff's

Motion and Defendants' Motion are hereby denied.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**08/18/2023**



Entered: 08/18/2023

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina